UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

STRAIGHT-OUT PROMOTIONS, LLC                                              PLAINTIFF

v.                                                          CIVIL ACTION NO. 3:04CV-475-S

FRANK WARREN, et al.                                                      DEFENDANTS

### MEMORANDUM OPINION

This matter is before the court on motion of the defendants, Frank Warren, et al., to dismiss the complaint for improper venue under Fed.R.Civ.P. 12(b)(3)(DN 5).

The facts pertinent to the resolution of the motion to dismiss are set out in the complaint and are taken as true for purposes of this opinion:

1. Straight-Out is in the business of boxing promotion. (¶ 10)[1].

2. Straight-Out is a Kentucky limited liability company duly established and authorized to conduct business in the Commonwealth of Kentucky. (¶ 1).

3. Frank Warren is a citizen of the United Kingdom. (¶ 2).

4. Sports & Leisure Boxing Ltd. ("S & L") is a corporation duly organized under the laws of the United Kingdom and is considered to be a citizen of the United Kingdom. (¶ 3).

5. S & L and Warren are the sole general partners in Sports Network, a partnership formed under the laws of the United Kingdom. (¶ 4).

6. Through their partnership, Sports Network, Warren and S & L are in the business of boxing promotion. (¶ 11).

7. On or about June 24, 2004, Straight-Out entered into three contracts with Sports Network securing the appearance and participation of Danny Williams in a fight against Mike Tyson, and securing co-promotional rights for Straight-Out to promote future boxing matches featuring Danny Williams (¶¶ 14, 15). These contracts consisted of the following:

---

[1] All references are to the Complaint and exhibits thereto.

      a. Provision of Services Agreement whereby Straight-Out was to pay Sports network for securing the appearance and participation of Danny Williams in the July 30, 2004 boxing match in Louisville. (¶ 16). This six-page contract contained, among its numerous provisions, the following language:

> This Agreement shall be interpreted construed and enforced under the Laws of England and Wales. Likewise any dispute arising under or in connection with this Agreement shall be decided by application to the Royal Courts of Justice, Strand, London. The parties consent, agree stipulate and submit to the irrevocable exclusive jurisdiction of the courts of England and Wales as the only forum of resolution of (1) any matter of interpretation, construction, or performance of this Agreement, (2) any dispute arising under or in connection with this Agreement and (3) any claim affecting the validity, construction, effect performance or termination of this Agreement. (¶ 16, Ex. A).

      b. Arrangement Fee Agreement whereby Straight-Out agreed to pay a fee for Sports Network's procurement of Danny Williams for the July 30, 2004 fight. (¶ 17). This one-paragraph letter agreement stated, in pertinent part:

> In consideration of Sports Network procuring that Danny Williams agrees to face Mike Tyson on 30 July 2004...Straight Out Promotions Inc...hereby agrees to pay an arrangement fee...This sum is in addition to the provision of services fee set out in the separate agreement... (¶ 17, Ex. B).

      c. Co-Promotional Rights Agreement whereby Straight-Out was to pay Sports Network to acquire co-promotional rights to promote Danny Williams' next three boxing matches in the event that Williams was the victor in the July 30, 2004 bout with Tyson. (¶ 18). This four-paragraph letter agreement stated, in pertinent part:

> I hereby write to confirm that in the event that Danny Williams defeats Mike Tyson in his contest in Louisville, Kentucky on 30 July 2004, Sports Network, as the exclusive promoters of Danny Williams, hereby grant to Straight Out Promotions Inc...the right to co-promote Danny Williams with Sports Network for Danny Williams' next three contests. Straight Out shall pay to Sports Network a fee...to acquire these co-promotional rights. This fee shall be payable whether Danny Williams beats Mike Tyson or not and is payable upon conclusion of the bout... (¶ 18, Ex. C).

8. On July 30, 2004, immediately prior to the commencement of the Tyson-Williams fight, a letter agreement, referred to by the parties in this case as "the Assignment," was drafted and executed by the parties. This three-paragraph document contained the following pertinent language:

> This letter authorizes Brealy International to settle the obligation of $150,000 payable to Sports Network under the terms of the agreements relating to the Mike Tyson vs Danny Williams bout in Kentucky on the 30th of July, 2004 from the upside of the International Pay-Per-View Agreement, which

- 3 -

>  Straight-Out Promotions is entitled to under said Agreement and amendments thereto...  (¶¶ 28 - 30, 35, 36, Ex. E).

Straight-Out has alleged breach of contract (Count II), conversion of contractual rights (Count III), fraudulent inducement and coercion (Count IV), and business defamation (Count V). It also seeks a declaration of rights that it is entitled to co-promote Danny Williams' next three boxing matches with Sports Network (Count I).

The discrete issue before the court is whether the forum selection clause contained in the Provision of Services Agreement requires the dismissal of this complaint for improper venue.  For the most part, the underlying events and disputes which took place before and after the Tyson-Williams boxing match and which gave rise to the claims in this case are immaterial to the determination of the venue question.  It is sufficient to note for purposes of this opinion that all of the agreements related to or were dependent upon the occurrence of the July 30, 2004 Tyson-Williams match.

Only the Provision of Services Agreement contained a forum selection clause.  The other three agreements are single-page letter agreements which were integrally related to the Provision of Services Agreement.  The language of the agreements quoted herein illustrates the interdependence of these agreements.

The Arrangement Fee Agreement required Straight-Out to pay an arrangement fee specifically for the procurement of Danny Williams' agreement to fight Mike Tyson on July 30, 2004.  The Provision of Services Agreement was the agreement between the parties to make the fight happen between those boxers on that date in this venue, and it established the various conditions under which it would happen.  Thus, the Arrangement Fee Agreement by necessity depended upon the Provision of Services Agreement which essentially created the fight event to which Sports Network would procure Williams' assent.

The Co-Promotional Rights Agreement bears a direct relationship to the Provision of Services Agreement insofar as Straight-Out's rights of co-promotion could not ripen unless and until Williams won the July 30, 2004 fight against Tyson. The Co-Promotional Rights Agreement could not operate to provide co-promotional rights to Straight-Out in the absence of the Provision of Services Agreement by which the parties contracted to make the event happen. Further, the Co-Promotional Rights Agreement was signed on June 24, 2004 with the Provision of Services Agreements and the Arrangement Fee Agreement, not as an afterthought.

The Assignment entered into on the night of the fight made specific reference to "the terms of the agreements relating to the Mike Tyson vs Danny Williams bout in Kentucky on the 30th of July, 2004." Thus there can be no question that the Assignment is related to the three June 24, 2004 agreements.

The court finds that the writings are integrated parts of a single transaction and must be read together. *See, Century Offshore Management Corporation v. BMO Financial Incorporated*, 119 F.3d 409 (6th Cir. 1997)(citing the Restatement (Second) of Contracts § 132, finding that signature on one agreement which was the centerpiece of the transaction bound the signatory to the supporting unsigned documents as well); *United States v. Hardy*, 916 F.Supp.1373(W.D.Ky. 1995)(citing Kentucky law that courts must "look to the acts of the parties in the execution and fulfillment of the agreement," and that "different instruments relating to and constituting a part of the same transaction may be interpreted together in determining the intention of the parties."); *Asplundh Tree Expert Company v. Bates*, 71 F.3d 592 (6th Cir. 1995). As such, there was an agreement to proceed to litigation on Straight-Out's claims only in the United Kingdom. To find otherwise would be to turn the forum selection clause on its ear.

The forum selection clause is a provision to which Straight-Out assented in the most detailed and inclusive agreement of the three entered into on June 24, 2004. The agreements all related to the Tyson-Williams bout on July 30, 2004. The forum selection clause in this central agreement is

detailed and clear. By its assent to this clause, Straight-Out agreed that the courts of England and Wales would be the only forum for resolution of "...any matter of...performance of this Agreement...any dispute arising in connection with this Agreement...and any claim affecting the effect performance or termination of this Agreement." (Provision of Services Agreement, ¶ 11). By its terms, the clause precluded litigation in Kentucky of claims arising under other related agreements.

In the declaratory judgment claim, Straight-Out has alleged that it satisfied all of its financial obligations to Sports Network under all of the contracts. (Count I, ¶ 50). In alleging breach of contract, Straight-Out has claimed that Sports Network breached its obligations to Straight-Out under the Co-Promotional Rights Agreement. As the court has indicated, any rights of Straight-Out to co-promote Williams were necessarily derived from the Provision of Services Agreement. (Count II, ¶ 54.) The claim for conversion of contractual rights is similarly dependent upon the Provision of Services Agreement. (Count III, ¶54).[2] The counts for fraudulent inducement, coercion and business defamation recite the obligations of Straight-Out under the three agreements and whether it satisfied those obligations. The interrelatedness of all of these contracts is undeniable.

Straight-Out has brought suit in Kentucky in contravention of its agreement that the courts of England and Wales would be the only forum for resolution of matters of performance of the Provision of Services Agreement, disputes arising in connection with it, or claims affecting the effect, performance, or termination of it. The language of the forum selection clause makes clear that it embraces the other agreements. Therefore, in looking at the agreements and their operative effect, the court concludes that the forum selection clause precludes the litigation of Straight-Out's claims in this court. The action will be dismissed by separate order.

---

[2]The court's citation to Count II, ¶ 54 and to Count III, ¶ 54 is not a typographical error. Both Counts II and III of the Complaint contain paragraphs numbered 53 through 56. This appears to be a drafting error. The court has distinguished between the differing paragraphs by referring to the particular Count under which the paragraph appears.